## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SPECTRONIC DENMARK A/S, )<br>DTC COMMUNICATIONS, INC., and )<br>DOMO LTD, )<br> )<br>Plaintiffs, )<br> )<br>v. )<br> )<br>JIMMI H. HANSEN, Individually, )<br>HENRIK KLEBAEK, Individually, and )<br>KENT MESSERSCHMIDT, Individually, )<br>COVIDENCE A/S, )<br> )<br>Defendants. ) | Civil Action No. 1:08-cv-0590 (RWR) |

### PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Plaintiffs Spectronic Denmark A/S ("Spectronic"), DTC Communications, Inc ("DTC"), and Domo, Ltd. ("Domo") (collectively the "plaintiffs") by and through their attorneys, McKool Smith P.C. and Jaeckle Fleischmann & Mugel, LLP (admission *pro hac vice* pending), hereby move this Honorable Court for a TEMPORARY RESTRAINING ORDER and PRELIMINARY INJUNCTION against defendants, Covidence A/S ("Covidence"), Jimmi H. Hansen, Individually ("Hansen"), Henrik Klebaek, Individually ("Klebaek") and Kent Messerschmidt, Individually ("Messerschmidt") (collectively the "defendants"), and state the following:

1.      Plaintiffs respectfully refer this Court to the Verified Complaint in this action, together with the exhibits appended thereto, the Affidavit of Christian T. Moestrup, sworn to April 1, 2008, and the plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for TRO

and Preliminary Injunction, and hereby incorporate by reference the facts and circumstances alleged therein.

2.      As set forth more fully in the papers referenced in paragraph 1, the plaintiffs conduct business in the extremely secretive surveillance industry.

3.      The individual defendants - all immediate past officers and unique employees of the plaintiffs - together with their new venture, Covidence, are currently using the plaintiffs' protected company secrets and property to unfairly and unlawfully compete with the plaintiffs in this highly secretive industry.  Unless enjoined by this Court, the defendants will cause further irreparable harm to the plaintiffs in Washington, D.C., particularly between April 23 - 24, 2008, at a major trade show in the District.

4.      Prior to their departure from the plaintiffs' employ, the individual defendants were high level employees of the plaintiffs and were thus privy to highly sensitive and secretive information.  The defendants self-terminated their employment with the plaintiffs as of February 26, 2007.

5.      As set forth in the Verified Complaint, in the weeks and months preceding their departure from the plaintiffs, the individual defendants (1) conspired to create a company, defendant Covidence A/S, to directly compete with the plaintiffs, and (2) stole the plaintiffs' trade secrets for the purpose of unfairly competing with the plaintiffs through this new venture.

6.      Since then, the defendants have consistently violated their valid employment agreements with the plaintiffs by intentionally misappropriating the plaintiffs' trade secrets in violation of their employment agreements and federal law, unfairly and unlawfully

competed against the plaintiffs in violation of their employment agreements and federal law, and have enjoining them from participating in any way in the GovSec, U.S. Law and Ready Exhibition 2008 in Washington, D.C. from April 23-24, 2008;purposefully reached into this jurisdiction to further these unlawful and irreparably harmful activities.

7.    As forth more fully in the Verified Complaint and the Affidavit of Christian T. Moestrup, the plaintiffs have recently learned that the defendants have registered to attend and participate at the "GovSec, U.S. Law and Ready 2008" Exposition in the Walter E. Washington Convention Center (the "Exposition"); are advertising the so-called "Oculus" recorder - a device the technology for which was stolen from the plaintiffs - in Washington, D.C.; and are actively soliciting the plaintiffs' current and prospective customers to do business with the defendants in Washington, D.C.

8.    Given the close and extremely secretive environment of the surveillance industry, should the defendants be allowed to participate in this Exposition, the plaintiffs' trade secrets will inevitably be disclosed, causing irreparable harm to the plaintiffs.

9.    Consequently, the plaintiffs seek a temporary restraining order and preliminary injunction enjoining defendants, pending further Order of this Court, from participating in any way in the Exposition.

10.    As the exhibits to the Verified Complaint demonstrate, the plaintiffs have made several attempts to notify the defendants that the defendants' conduct must cease immediately.  The defendants have ignored the plaintiffs' cease and desist demands.

11.    Plaintiffs have no adequate remedy at law.

12.    Plaintiffs' counsel conveyed a copy of the MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION, the MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION and the AFFIDAVIT OF CHRISTIAN T. MOESTRUP to Defendant Covidence A/S by electronic mail to the address (info@covidence.dk) listed on its internet web page (www.covidence.dk) at 3:58 p.m. Eastern Time on April 8, 2008.  In addition, the plaintiffs will promptly serve a copy of the motion and all supporting papers upon the defendants pursuant to the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil or Commercial Matters (20 UST 361, TIAS 6638; TIAS 6638; 28 USCA (Appendix following Rule 4 FRCvP); 16 I.L.M. 1339 (1977).

DATED:        April 8, 2008

**McKOOL SMITH P.C.**


By  /s/ Michael G. McManus
Michael G. McManus (Bar No. 493422)
*Attorneys for Plaintiffs Spectronic Denmark A/S,*
*DTC COMMUNICATIONS, INC., and DOMO, LTD.*
1700 K Street, NW
Suite 740
Washington, D.C. 20006
Telephone: 202.370.8301
Facsimile: 202.370.8344



**JAECKLE FLEISCHMANN & MUGEL, LLP**
B. Kevin Burke, Jr.
(admission *pro hac vice* pending)
*Attorneys for Plaintiff Spectronic Denmark A/S,*
*DTC COMMUNICATIONS, INC., and DOMO, LTD.*
12 Fountain Plaza
Buffalo, New York  14202
Telephone: 716.856.0600
Facsimile: 716.856.0432

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| SPECTRONIC DENMARK A/S,<br>DTC COMMUNICATIONS, INC.,<br>DOMO, LTD, | )<br>)<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| v. | )<br>) | Civil Action No. 1:08-cv-0590 (RWR) |
| | )<br>) | |
| JIMMI H. HANSEN, Individually,<br>HENRIK KLEBAEK, Individually, and<br>KENT MESSERSCHMIDT, Individually,<br>COVIDENCE A/S, | )<br>)<br>)<br>) | |
| Defendants. | )<br>) | |

**MEMORANDUM OF LAW IN SUPPORT
OF PLAINTIFFS' MOTION FOR
TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION**

Plaintiffs Spectronic Denmark A/S ("Spectronic"), DTC Communications, Inc ("DTC"), and Domo, Ltd. ("Domo") (collectively the "plaintiffs") by and through their attorneys, McKool Smith LLP and Jaeckle Fleischmann & Mugel, LLP (admission *pro hac vice* pending), respectfully submit the following memorandum of law in support of their Motion for Temporary Restraining Order and/or Preliminary Injunction.

## INTRODUCTION

The defendants in this action, Covidence A/S ("Covidence"), Jimmi H. Hansen, Individually ("Hansen"), Henrik Klebaek, Individually ("Klebaek") and Kent Messerschmidt,

Individually ("Messerschmidt") (collectively the "defendants") - all immediate past officers and unique employees of the plaintiffs - together with their new venture, Covidence, have registered to attend and participate at the "GovSec, U.S. Law and Ready 2008" Exposition in the Walter E. Washington Convention Center (the "Exposition") in Washington, D.C. from April 23-24, 2008. (Complaint, ¶ 3). As set forth in the Verified Complaint in this action and in the Affidavit of Christian T. Moestrup, sworn to April 1, 2008, the defendants have violated their non-disclosure agreements with the plaintiffs, have stolen the plaintiffs' trade secrets and have used them to develop knock-off goods actively marked by the defendants in this judicial district. Unless immediately enjoined by this Court, the defendants will irreparably harm the plaintiffs by unlawfully disclosing the plaintiffs' closely guarded trade secrets the April 23-24 Exposition.

In order to prevent such irreparable harm, the plaintiffs request a TRO and preliminary injunction enjoining defendants, pending further Order of this Court, from participating in any way in the U.S. Law Conference & Exposition in Washington, D.C., April 23-24, 2008, and for the related relief set forth in the Verified Complaint and the Affidavit of Christian T. Moestrup.

## **FACTS**

Plaintiffs' respectfully refer the Court to the Verified Complaint, together with the exhibits appended thereto, as well as the Affidavit of Christian T. Moestrup, for a complete recitation of the facts and circumstances relevant to this motion.

Spectronic is in the business of developing and supplying electronic surveillance equipment and services for global law enforcement, military, and other intelligence agencies. (Moestrup Aff, ¶ 6). The individual defendants in this action are all immediate past officers and

were unique employees of the plaintiffs and were intimately involved in every aspect of the

plaintiffs' development of surveillance equipment and business strategy in connection therewith.

(Moestrup Aff, ¶ 7).  As officers, defendants Hansen, Klebaek and Messerschmidt were entrusted

with highly confidential and proprietary trade secret information not available to lower level

employees of the plaintiffs.  (Moestrup Aff, ¶ 8).

    All three individual defendants were intimately involved in, and helped design, the

plaintiffs' strategic plans for 2007 through 2011, including all of the plaintiffs' plans as they relate

to video and audio recorders and recording systems.  (Moestrup Aff, ¶ 10).  Because of the

individual defendants' unique fiduciary status with the company, all three individual defendants

were granted confidential access to the plaintiffs' computerized accounting system, "Axapta."  All

of the plaintiffs' customer information is stored on this password protected system.  (Moestrup

Aff, ¶ 11).  Moreover, the individual defendants were also granted access to the plaintiffs'

customer system called "Superoffice."  Superoffice contains highly sensitive and proprietary

information regarding Spectronic's customer identifications and needs.  (Moestrup Aff, ¶ 12).

    In light of the individual defendants' unique fiduciary status with the plaintiffs, all

three individual defendants signed, for adequate consideration, employment agreements

containing nondisclosure clauses (Moestrup Aff, ¶ 13) containing the following nondisclosure

clauses:

> "The employee shall observe a duty of confidentiality, both during
> the employment and after its expiry with regard to the company's
> business affairs, operating conditions, technical experience, working
> methods, fabrication efforts or similar and neither to his own nor
> third parties' advantage to use your knowledge of company matters
> altogether."

3

and:

> "It is contrary to the employment contract that the employee has financial, commercial or work-related interests in or together with other competing activities without the prior written consent of the company."

(Moestrup Aff, ¶ 14). Despite the individual defendants' fiduciary and contractual obligations to refrain from impairing the goodwill of the plaintiffs and/or disclose the plaintiffs' confidential and proprietary information, on or about April 2, 2007, the individual defendants established co-defendant Covidence A/S with the express intent of unfairly competing with the plaintiffs. (Moestrup Aff, ¶ 15).

Among the products Covidence currently markets is the so-called "Oculus" video recorder, a device developed and manufactured using the plaintiffs' proprietary information. (Moestrup Aff, ¶ 16). In a blatant breach of their fiduciary and contractual duties to the plaintiffs, the defendants stole the technology associated with the plaintiffs' recorders described in the Verified Complaint and its exhibits and used this proprietary information to develop the Oculus recorder. (Moestrup Aff, ¶ 17). In addition to possessing the plaintiffs' trade secret protected technology, the defendants also have access to all of the plaintiffs' customers *and* suppliers by virtue of their special access to the plaintiffs' Axapta and Superoffice programs while they were employed as the plaintiffs' fiduciaries. (Moestrup Aff, ¶ 18).

The defendants are currently using all of this misappropriated information to market the Oculus video recorder in the District of Columbia, as evidenced by their registration at the Exposition and by their advertising of the Oculus in Washington, D.C. (Complaint, Exhibits 1 and 2).

# ARGUMENT

## POINT I

### THIS COURT HAS
### PERSONAL JURISDICTION OVER THE DEFENDANTS

As a preliminary matter, it must be noted that this Court has personal jurisdiction over the defendants in this action and may grant the relief requested by the plaintiffs in this motion.  The District of Columbia's long-arm statute states that in order to establish personal jurisdiction under D.C. Code Ann. § 13-423(a)(4), a plaintiff must show minimum contacts within the confines of due process before the Court can exercise personal jurisdiction over the defendant.  The only question before the Court, therefore, is whether the defendants (1) solicit business in the District of Columbia, or (2) derive substantial revenue from goods used or consumed or services rendered in the District, or (3) engage in any other persistent course of conduct here.

The minimum requirements of the long-arm statute are met in this case.  It cannot be disputed that the defendants have conducted business in this jurisdiction by purchasing a booth in the Walter E. Washington Convention Center (Booth #1109) and advertising their physical presence at this booth to the plaintiffs' current and prospective customers and suppliers. (Complaint, Exhs. 1 and 2).  Moreover, it is believed that the defendants have mailed hard copies of press releases advertising their appearance at the Exposition and have posted news of their appearance with specific business information on a Web site relating to the conference.  *Id.*

The District of Columbia courts have held that advertising via the internet and the issuance of "two to three" press releases via the internet are enough to demonstrate personal jurisdiction over a defendant.  *See Blumenthal v. Drudge*, 992 F. Supp. 44 (D.D.C. 1998).  The

combination of physical and internet presence, in addition to hard copies of press releases sent

directly and purposefully into the geographic territory in question, therefore, confers personal

jurisdiction over the defendants for the purposes of this motion and the underlying case. *See id.*

## POINT II

### PLAINTIFFS ARE ENTITLED TO
### A TEMPORARY RESTRAINING ORDER

This Court has the authority to grant a temporary restraining order pursuant to Rule

65(b) of the Federal Rules of Civil Procedure if:

> (1) it clearly appears from specific facts shown by affidavit
> or by the verified complaint that immediate and irreparable
> injury, loss, or damage will result to the applicant before the
> adverse party or that party's attorney can be heard in
> opposition, and (2) the applicant's attorney certifies to the
> court in writing the efforts, if any, which have been made to
> give the notice and the reasons supporting the claim that
> notice should not be required.

Fed. R. Civ. P. 65(b). The standards for issuance of a temporary restraining or preliminary

injunction are well established. *RCM Techs., Inc. v. Beacon Hill Staffing Group*, LLC, 502 F.

Supp. 2d 70, 73 (D.D.C. 2007). This Court may grant the relief sought by the plaintiffs if they

demonstrate: (1) a substantial likelihood of success on the merits of its claims; (2) that they will

suffer irreparable harm if an injunction is not granted; (3) that the issuance of an injunction will

not unduly or substantially harm other parties; and (4) that the public interest favors issuance of

an injunction. *See id.* Based on the facts set forth in the Verified Complaint and the Affidavit of

Christian T. Moestrup, the plaintiffs are entitled to a TRO enjoining the defendants from unfairly

competing and disclosure the plaintiffs' trade secrets in this jurisdiction.

### A.    Spectronic Has Demonstrated A Reasonable Probability Of Success On The Merits

Among the other counts in the Verified Complaint, the plaintiffs have sued defendants Hansen, Klebaek and Messerschmidt for violations of the Lanham Act, 15 U.S.C. § 1125(a)(1), the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(4) and the District of Columbia Trade Secrets Act, D.C. Code § 36-401 *et seq*,.  As described herein, the Verified Complaint and the Moestrup Affidavit clearly demonstrate at least a reasonable probability that Spectronic will succeed on the merits of these claims.

### 1.    Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(4)

A civil action under § 1030(a)(4) of the CFAA has four elements:

1.    Defendant has accessed a "protected computer,"
2.    [Defendant] has done so without authorization or by exceeding such authorization as was granted,
3.    [Defendant] has done so "knowingly" and "with intent to defraud," and
4.    As a result, [Defendant] has "further intended fraud and obtained anything of value.

*Butera & Andrews v. IBM Corp*., 2006 U.S. Dist. LEXIS 75318 (D.D.C. 2006).  The term "protected computer" is defined in the CFAA to include any computer "which is used in interstate or foreign commerce or communication."  18 U.S.C. § 1030(e)(2)(b).  With regard to the third and fourth elements identified above, it should be noted that § 1030(a)(4) of the CFAA does not require a plaintiff to aver the specific elements of common law fraud; rather, courts simply require the wrongdoing in order to satisfy the intent to defraud.  *See Shurgard Storage Centers, Inc. v. Safeguard Self-Storage, Inc.*, 119 F.Supp.2d 1121, 1121-1126 (W.D. Wash. 2000).

All four elements are present in the case at bar.  As set forth more fully in the Verified Complaint and the exhibits annexed thereto, the individual defendants had access to both

the plaintiffs' "Superoffice" computer network and the plaintiffs' computerized accounting system, "Axapta." All of Spectronic's customer information is stored on this password-protected system. As is set forth in the Verified Complaint, the defendants had unlimited access to Spectronic's most sensitive and highly guarded trade secret information, including all of Spectronic's technical, financial, commercial and customer-related trade secrets. As is set forth in the Verified Complaint, the defendants have, without the plaintiffs' authorization, knowingly used this stolen information to unfairly and unlawfully compete with the plaintiffs. Further, by registering at the Exposition in Washington D.C., the defendants have made it clear that they intend to continue to intentionally and unfairly compete with the plaintiffs using the plaintiffs' trade secrets obtained from the plaintiffs' computer networks.

### 2. District of Columbia Trade Secrets Act

To bring a trade secret misappropriation claim the plaintiff must establish that there was an agreement to maintain confidentiality over the subject matter. *Park v. Arnott*, 1992 U.S. Dist. LEXIS 9903 (D.D.C. 1992). A trade secret is defined as:

> Information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> (a) Derives actual or potential independent economic value, from not being generally known to, and not being readily ascertainable by, proper means by another who can obtain economic value from its disclosure or use; and
>
> (b) Is the subject of reasonable efforts to maintain its secrecy.

D.C. Code § 36-401(4) (a) (b).

Purely commercial information such as an employer's customer lists, specific client information such as a name and telephone number of a client contact, the client's needs, the products provided to the client, components of a business' pricing structure, leads on prospective customers, marketing programs and strategies, sales and profit margins, budgets, labor costs and bidding procedures are all protectable as trade secrets under District of Columbia law. *See Public Citizen Health Research Group v. Food & Drug Admin.*, 704 F.2d 1280, 1289 (D.C. Cir. 1983) ("commercial information should be given its ordinary meaning") *Metropolitan Life Ins. Co. v. Usery,* 426 F. Supp. 150, 159 (D.D.C. 1976); *Ajilon Prof'l, Staffing, PLC v. Kubicki*, 503 F. Supp. 2d 358, 361 (D.D.C. 2007).

In the present case, Spectronic possesses competitively sensitive information which constitutes legally protectable confidential information and trade secrets under District of Columbia Law.  As set more fully in the Verified Complaint, the exhibits appended thereto, and as further explained in the Affidavit of Christian T. Moestrup, these trade secrets are of great value to the plaintiffs and the plaintiffs have a legally protectable right to protect these trade secrets.  In light of their unique status as fiduciaries of the plaintiffs, the individual defendants were made privy to these trade secrets by the plaintiffs while the defendants were in a position of trust and confidence.  The defendants have disclosed these trade secrets without authorization from the plaintiffs to make use of these secrets for themselves, to the prejudice of the plaintiffs, and should be enjoined from irreparably harming the plaintiffs in Washington D.C.

### 3.    The Lanham Act, 15 U.S.C. § 1125(a)(1)

The Lanham Act forbids the type of unfair competition engaged in by the defendants, and defines prohibited conduct such as theirs as follows:

> False designations of origin and false descriptions forbidden (a) Civil action. (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

15 U.S.C. § 1125(a)(1).

As set forth in the Verified Complaint and the exhibits annexed thereto, and as further explained in the Affidavit of Christian T. Moestrup, the defendants have stolen the plaintiffs' proprietary data, including almost every aspect of Spectronic's trade secrets, both on the technical and functional side of Spectronic's business. Defendants are using this stolen information to design, manufacture and distribute "knock-off" goods and services, including the Oculus recorder, and are intentionally confusing the marketplace by trading on the goodwill of the plaintiffs. As a result of the defendants' actions, current and potential customers and suppliers of the plaintiffs have been deceived and diverted away from the plaintiffs and the plaintiffs' goods and services - all to the general detriment of the surveillance industry and to the specific detriment of the plaintiffs. Consequently, this Court should enjoin the defendants from participating in the U.S. Law Conference and Exposition in Washington, D.C.

**B.    Injunctive Relief Is Necessary To Prevent Immediate And Irreparable Harm To Spectronic Which Cannot Be Compensated By Money Damages**

According to the District of Columbia District Court an entity may suffer irreparable harm "loss of the confidentiality of customer information and the concomitant loss of customer trust and goodwill," that occurs when trade secrets are revealed. *Morgan Stanley DW Inc. v. Rothe*, 150 F. Supp. 2d 67, 77 (D.D.C. 2001). The District of Columbia courts have also recognized that "the decision to grant or deny preliminary injunctive relief is committed to the sound discretion of the trial court" *Stamenich v. Markovic*, 462 A.2d 452, 456 (D.C. 1983) and that the injunction should be issued if the threat of injury in "imminent and well founded." *Zirkle v. District of Columbia*, 830 A.2d 1250, 1256 (D.C. 2003).

Defendants' misappropriation of the plaintiffs' confidential information and trade secrets, combined with defendants' registration at the U.S. Law Conference & Exposition demonstrates past use and disclosure of the plaintiffs' information to or for the benefit of at least one of the plaintiffs' competitors, including defendants themselves. Defendants inevitable misuse of the plaintiffs' information going forward will cause irreparable harm to the plaintiffs in that it will threaten the very existence of the business itself because the revelation of trade secrets and other confidential information harms the plaintiff's ability to exist as a business entity. That irreparable harm includes, in part, further disclosure of the plaintiffs' confidential and proprietary information, loss or threatened loss of business opportunities, loss or threatened loss of goodwill with existing and prospective customers, loss or threatened loss of market advantage, and loss or threatened loss of revenues. *See Ajilon Prof'l, Staffing, PLC v. Kubicki*, 503 F. Supp. 2d 358, 362 (D.D.C. 2007) (irreparable harm is where the loss threatens the very existence of the movant's business).

Indeed, once the plaintiffs' confidential information is divulged, that information will lose its protected status and value to the plaintiffs. Such harm is irreparable and cannot be compensated for by money damages. *Id.* Furthermore, the plaintiffs have no meaningful legal remedy to prevent defendants from continuing to inflict this harm upon the plaintiffs absent injunctive relief. *Id.*

The need for immediate relief is particularly urgent in this case. If the defendants are allowed to participate at the Exposition in Washington, the plaintiffs' trade secrets will be revealed to the widest possible assembly of surveillance industry customers and suppliers in the United States. Without a temporary restraining order and/or preliminary injunction in place to stop the defendants from such disclosure, by the time the Court turns to the merits of the plaintiffs claims following traditional discovery and pretrial conferences, the plaintiffs will have been irreparably harmed. Once the defendants reveal the plaintiffs' proprietary information at the Exposition, it will be impossible for the plaintiffs to recover their lost confidential information and goodwill.

### C.    Greater Injury Would Result If The Court Refused To Enter A Temporary Restraining Order Than If The Court Granted The Requested Relief

The harm that Spectronic would suffer if the Court denied its request for injunctive relief greatly outweighs any potential harm that the defendants would incur if the Court granted a temporary restraining order. If the Court denied the relief, Spectronic would lose its confidential information and the value of the time and resources that it invested in developing that information. Spectronic would also inevitably lose customer goodwill, business opportunities and its competitive edge in its industry. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Wertz,* 298 F.

Supp. 2d 27, 34 (D.D.C. 2002) (holding that "loss of customers and business" and "goodwill" is a protectable interest).

   In contrast to the severe and substantial harm that the plaintiffs would suffer absent the entry of injunctive relief, a temporary restraining order would not harm defendants, as defendants would simply be enjoined from engaging in conduct that they have no legitimate right to undertake in the first place.  Specifically, defendants would be enjoined from (a) using or disclosing the information they misappropriated from the plaintiffs, (b) interfering with the plaintiffs' existing and prospective customer and employee relationships, and (c) unfairly competing with the plaintiffs in violation of their contractual and common law fiduciary duties to Spectronic.  Defendants Hansen, Klebaek and Messerschmidt would not, however, be precluded from conducting legitimate business using their own resources.  These three defendants would remain free to utilize their skills in a manner that would not violate their duties to the plaintiffs and would minimize the potentially devastating impact that their breaches and misappropriation could have.  At worst, these three individual defendants could lose possible earnings, which may be compensated for by money damages if the Court finds that the temporary restraining order was improvidently granted.  In effect, the three individual defendants would merely be prevented from unlawfully competing with the plaintiffs and interfering with their business relations through the use of confidential information that they misappropriated from the plaintiffs in the first place.

   **D.** **The Public Interest Would Be Best Served By Restraining Defendants From Using Or Disclosing The Confidential And Proprietary Information And Trade Secrets Belonging To The Plaintiffs**

   As discussed above, courts of equity will protect an employer by issuing injunctive relief to enjoin and restrain a former employee from using or disclosing the employer's confidential information and trade secret information to the employer's competitor.  *See*, *e.g.*,

*Merrill Lynch* at 34-35.  In this case, defendants indisputably misappropriated valuable information that the plaintiffs had developed over decades of business, disclosed at least some of that information to the plaintiffs' competitors, registered to participate in the U.S. Law Conference & Exposition in direct competition with the plaintiffs, and otherwise misused the plaintiffs' information for their own benefit.  Moreover, there is a threat, made all the more credible by defendants' conduct thus far, that defendants will continue to misuse and unlawfully disclose the plaintiffs' information.  The public interest would be best served here by immediately enjoining and restraining defendants from any further misuse or disclosure of the plaintiffs' confidential and proprietary business information and trade secrets, and by forcing defendants to refrain from unfairly competing with the plaintiffs and returning any misappropriated proprietary information to the plaintiffs.

## POINT III

### EQUITY PROTECTS THE PLAINTIFFS' INTEREST IN THEIR PROPRIETARY INFORMATION, THEIR COMPUTER NETWORK AND THE DATA AND APPLICATIONS CONTAINED THEREIN

The Lanham Act, 15 U.S.C. § 1116, the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §1030, and the District of Columbia Trade Secrets Act, D.C. Code § 36-401 *et seq.*, all expressly provide that the courts may award injunctive relief to enjoin and restrain violations.  *See* the Lanham Act, 15 U.S.C. § 1116 ("The several courts vested with jurisdiction of civil actions arising under this Act shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable . . . to prevent a violation under subsection (a), (c), or (d) of section 43 [15 USCS § 1125]"), CFAA, 18 U.S.C. §1030(g) ("Any person who suffers damage or loss by reason of a violation of this section may

maintain a civil action against the violator to obtain … injunctive relief or other equitable relief."); D.C. Code § 36-402(a) ("Actual or threatened misappropriation [of trade secrets] may be enjoined.").

District of Columbia courts will protect an employer by issuing injunctive relief to enjoin and restrain a former employee from using or disclosing the employer's confidential information and trade secret information to the employer's competitors. *See, e.g., Morgan Stanley DW Inc. v. Rothe*, 150 F. Supp. 2d 67, 80 (D.D.C. 2001) (granting injunctive relief to an employer enjoining a former employee from using confidential information, and directing him to return, trade secrets that she he misappropriated from his former employer); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Wertz*, 298 F. Supp. 2d 27 (D.D.C. 2002) (granting an emergency restraining order preventing former employees from disclosing confidential information or business secrets based on contractual provisions).

As set forth more fully in the Verified Complaint and the Moestrup Affidavit, the combination of the highly confidential nature of the surveillance industry and the actions of the defendants in this action demonstrate an extremely high - if not irrefutable - presumption that the defendants have misappropriated the plaintiffs' confidential and trade secret information.  The defendants' access to the plaintiffs' password-protected computer systems containing *all* of the plaintiffs' protected trade secrets, and the specific instances of the defendants' self-dealing and usurpation of specific projects, customers and suppliers, all demonstrate that the defendants should be enjoined from irreparably harming the plaintiffs by unfairly competing with them at the Exposition on April 23-24, 2008.  Failure to enjoin the defendants' participation in the Exposition will lead to the inevitable disclosure of the plaintiffs' trade secrets and will irreparably harm the plaintiffs.

## **<u>CONCLUSION</u>**

For all of the foregoing reasons, the plaintiffs respectfully requests that this Court grant the relief requested in their motion for a temporary restraining order and preliminary injunction and enter an Order awarding the relief sought in plaintiffs' motion.

DATED:       Washington, D.C.
             April 8, 2008

**McKOOL SMITH P.C.**

By  /s/ Michael G. McManus
 Michael G. McManus (Bar No. 493422)
*Attorneys for Plaintiffs Spectronic Denmark A/S,*
*DTC COMMUNICATIONS, INC., and DOMO, LTD.*
1700 K Street, NW
Suite 740
Washington, D.C. 20006
Telephone: 202.370.8301
Facsimile: 202.370.8344

**JAECKLE FLEISCHMANN & MUGEL, LLP**
B. Kevin Burke, Jr.
(admission *pro hac vice* pending)
*Attorneys for Plaintiff Spectronic Denmark A/S,*
*DTC COMMUNICATIONS, INC., and  DOMO, LTD.*
12 Fountain Plaza
Buffalo, New York  14202
Telephone: 716.856.0600
Facsimile: 716.856.0432

836367

# CERTIFICATE OF SERVICE

I hereby certify that the Plaintiffs will serve a copy of the Motion for Temporary Restraining Order and Preliminary Injunction, and Memorandum in Support Thereof and the Affidavit of Christian T. Moestrup upon the defendants by international mail on April 9, 2008, and will further promptly serve such documents pursuant to the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil or Commercial Matters (20 UST 361, TIAS 6638; TIAS 6638; 28 USCA (Appendix following Rule 4 FRCvP); 16 I.L.M. 1339 (1977)).  I further certify that such documents were sent to Covidence A/S by electronic mail on April 8, 2008.


**McKOOL SMITH P.C.**


By_____/s/ Michael G. McManus_____
Michael G. McManus (Bar No. 493422)
*Attorneys for Plaintiffs Spectronic Denmark A/S,*
*DTC COMMUNICATIONS, INC., and*
*DOMO, LTD.*
1700 K Street, NW
Suite 740
Washington, D.C. 20006
Telephone: 202.370.8301
Facsimile: 202.370.8344

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SPECTRONIC DENMARK A/S,　　　　　)
DTC COMMUNICATIONS, INC., and　　)
DOMO, LTD,　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiffs,　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　v.　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
JIMMI H. HANSEN, Individually,　　　)
HENRIK KLEBAEK, Individually, and　)
KENT MESSERSCHMIDT, Individually,　)
COVIDENCE A/S,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　Defendants.　　　　　　　)

Civil Action No. *1:08-CV-0590*

**AFFIDAVIT OF
CHRISTIAN T. MOESTRUP**

**CHRISTIAN T. MOESTRUP,** being duly sworn, deposes as follows:

1.　　　I am a Project Manager with Plaintiff Spectronic Denmark A/S, one of the

plaintiffs in the above-captioned action, and, as such, I am fully familiar with the facts and

circumstances set forth herein.

2.　　　I submit this affidavit in support of the motion by the plaintiffs, Spectronic

Denmark A/S, DTC Communications, Inc. and Domo, Ltd. (collectively the "plaintiffs") for a

temporary restraining order and preliminary injunction setting forth the following relief:

　　　　a.　　　Against defendants Jimmi H. Hansen ("Hansen"), Henrik Klebaek

("Klebaek") Kent Messerschmidt ("Messerschmidt") and Covidence A/S ("Covidence"),

enjoining and retraining them from participating in any way in the GovSec, U.S. Law and Ready Exhibition 2008 in Washington, D.C. from April 23-24, 2008;

b.     Against all named defendants, enjoining and restraining them during the pendency of this action and permanently, from disclosing, divulging or using in any manner the trade secrets and protected information of Spectronic or other information relating to Spectronic's conduct of business; and

c.     Against defendants Hansen, Klebaek and Messerschmidt, enjoining and restraining them during the pendency of this action and permanently, from taking any action in violation of the terms of their employment agreements with Spectronic and/or in violation of their duties arising out of their status as former employees of Spectronic;

3.     I have personally reviewed the allegations set forth in the plaintiffs' Verified Complaint in this action; know them to be true of my own knowledge, except as to those matters alleged "upon information and belief," and as to them, I believe them to be true; and I specifically incorporate by reference each and every allegation herein.

4.     The most immediate threat of irreparable harm to the plaintiffs' business is presented by the defendants' participation in the GovSec, U.S. Law and Ready Exposition 2008 this April 23-24, 2008, in Washington, D.C. (the "Exposition").

5.     As set forth more fully in the Verified Complaint in this action, absent immediate judicial intervention, the individual defendants and their new company, Covidence, will cause irreparable harm to the plaintiffs by disclosing trade secrets obtained by the defendants while employed by the plaintiffs as the plaintiffs' fiduciaries.

2

6.     Spectronic is in the business of developing and supplying electronic surveillance equipment and services for global law enforcement, military, and other intelligence agencies.

7.     As set forth more fully in the Verified Complaint, the individual defendants in this action are all immediate past officers, were unique employees of the plaintiffs and were intimately involved in every aspect of the plaintiffs' development of surveillance equipment and business strategy in connection therewith.

8.     As officers, defendants Hansen, Klebaek and Messerschmidt were entrusted with highly confidential and proprietary trade secret information not available to lower level employees of the plaintiffs.

9.     As set forth more fully in the Verified Complaint, all three individual defendants were involved intimately in the research, development, design and marketing of the plaintiffs' highly sophisticated products, including, but not limited to, the plaintiffs' video and audio recorders.

10.    All three individual defendants were intimately involved in, and helped design, the plaintiffs' strategic plans for 2007 through 2011, including all of the plaintiffs' plans as they relate to video and audio recorders and recording systems.

11.    Because of the individual defendants' unique fiduciary status with the company, all three individual defendants were granted confidential access to the plaintiffs' computerized accounting system Axapta. All of the plaintiffs' customer information is stored on this password protected system.

12.    The individual defendants were also granted access to the plaintiffs' customer system called "Superoffice," a computer system containing highly sensitive and proprietary information regarding Spectronic's customer identifications and needs.

13.    As set forth more fully in the Verified Complaint, because of the individual defendants' unique fiduciary status with the plaintiffs, all three individual defendants signed, for adequate consideration, employment agreements containing the following nondisclosure clauses.

> "The employee shall observe a duty of confidentiality, both during the employment and after its expiry with regard to the company's business affairs, operating conditions, technical experience, working methods, fabrication efforts or similar and neither to his own nor third parties' advantage to use your knowledge of company matters altogether."

and:

> "It is contrary to the employment contract that the employee has financial, commercial or work-related interests in or together with other competing activities without the prior written consent of the company."

14.    The defendants have breached have breached both of these contractual duties to the plaintiffs.

15.    Despite the individual defendants' fiduciary and contractual obligations to refrain from impairing the goodwill of the plaintiffs and/or disclosing the plaintiffs' confidential and proprietary information, on or about April 2, 2007, the individual defendants established co-defendant Covidence A/S with the express intent of unfairly competing with the plaintiffs.

4

16.     Among the products Covidence currently markets is the so-called "Oculus" video recorder, a device developed and manufactured using the plaintiffs' proprietary information.

17.     In a blatant breach of their fiduciary and contractual duties to the plaintiffs, the defendants stole the technology associated with the plaintiffs' recorders described in the Verified Complaint and its exhibits and used this proprietary information to develop the Oculus recorder.

18.     In addition to possessing the plaintiffs' trade secret protected technology, the defendants also have access to all of the plaintiffs' customers *and* suppliers by virtue of their special access to the plaintiffs' Axapta and Superoffice programs while they were employed as the plaintiffs' fiduciaries.

19.     The defendants are currently using all of this misappropriated information to market the Oculus video recorder in the District of Columbia, as evidenced by their purchase of a booth at and registration for the Exposition, coupled with their advertising of the Oculus recorder in Washington, D.C. (Complaint, Exhibits 1 and 2).

20.     Absent immediate judicial intervention, the defendants will inevitably disclose the plaintiffs' proprietary information at the Exhibition, causing the plaintiffs to suffer irreparable harm.

21.     Consequently, and for all of the reasons set forth in the plaintiffs' Verified Complaint, the plaintiffs respectfully request a temporary restraining order and preliminary

injunction enjoining the defendants from participating, in any way, in the GovSec, U.S. Law and Ready 2008 Exhibition from April 23-24, 2008.

_____
CHRISTIAN T. MØESTRUP

Sworn to before me this
_1ˢᵗ_ day of _April_____, 2008.

Notary Public