IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
SPECTRONIC DENMARK A/S, *et al.*,   )
                                    )
         Plaintiffs,              )   No. 1:08-CV-00590 (PLF)
                                    )
         v.                       )
                                    )
JIMMI M. HANSEN, *et al.*,          )
                                    )
         Defendants.              )
_____ )

### DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SANCTIONS

**I.   INTRODUCTION**

Rather than respond to Defendants' argument that Plaintiffs' claim was made for an improper purpose and with no basis, Plaintiffs' opposition to Defendants' Motion for Sanctions is a rambling attempt to fling mud in every conceivable direction in he hope that the Court will grow weary of trying to sort out this case and simply deny sanctions. But such a result would be incredibly unfair to Defendants. Plaintiffs' ultimate argument is that "Defendants should not be *rewarded* with the rarely issued and inherently punitive sanction of attorney's fees." Pl. Opp. at 3 (emphasis added). Rewarded? Defendants have incurred more than $50,000 in attorney's fees and costs fighting off a preliminary injunction motion that threatened their company's very existence where (1) Plaintiffs have been caught red-handed failing to disclose to the Court that the relief they sought here had been denied in a lengthy preliminary injunction proceeding in Denmark; (2) Plaintiffs' premise for the existence of federal jurisdiction is facially incorrect; and

(3) the federal claims on which this case is based are clearly inapplicable to the parties' disputes. This was a case of a large Danish company using the courts of this nation to inflict business harm on a smaller, fledgling competitor, by requiring its smaller competitor to either forgo entry into the United States market or pay a "litigation tax" in excess of $50,000 in order to do so. Plaintiffs' stated desire to avoid rewarding misconduct is particularly ironic here, as Plaintiffs have already been rewarded by being able to use this Court to inflict monetary injury on its competitor, with no basis at all to bring the parties' quintessentially Danish dispute to this country. The only question is whether Plaintiffs should be permitted to keep that reward, and the answer to that is clearly no.

## II.   ANALYSIS

### A.   Plaintiffs' Opposition Does Not Change That Plaintiffs Materially Misrepresented the Nature of the Danish Proceedings

Plaintiffs' claim that they did not offer an incomplete and misleading description of the Danish preliminary injunction proceedings is a classic case of misdirection. Plaintiffs claim that they narrowed the scope of the relief they sought because some of their customers did not want to identify themselves, and that Plaintiffs therefore narrowed the list of customers with respect to which they sought injunctive relief to 48 customers. Pl. Opp. at 5. That is beside the point. That narrowing relates solely to Plaintiffs' alternative (and subsidiary) request for injunctive relief, an injunction that simply would have enjoined Defendants from doing business with Plaintiffs' customers. But Plaintiffs' primary request for relief did not deal with soliciting (or doing business with) Plaintiffs' customers; it was a request for a judicial death sentence that would have prohibited Defendants from doing business with *anyone*, *anywhere in the world*.

Plaintiffs' Danish motion, a copy of which Plaintiffs did not provide to the Court, asked the Danish court for the following relief:

> [That Defendants be] separately, together or partially together, in a period of five years starting April 1, 2007 . . . prohibited from directly or indirectly supplying, selling, renting out or delivering sound- and video-recording equipment as well as wireless sound- and video-recording products to police-, military-, or intelligence- authorities domestically and abroad.

O'Connor Decl., Ex. B at 2; Sorenson Decl. ¶ 3. Only as subsidiary and alternative relief did Plaintiffs seek a preliminary injunction that would have preliminarily barred Defendants from doing business with certain specified distributors. O'Connor Decl., Ex. B at 3. Plaintiffs' claim that they narrowed their requested relief because certain customers did not want to be identified goes to the scope of Plaintiffs' *alternative* request for relief, but does nothing to change the fact that Defendants' primary request was that Defendants be enjoined from competing, on a worldwide basis, for five years.

Indeed, the Danish court understood this to be Plaintiffs' requested relief. Of the three pages from the Danish injunction decision that Plaintiffs filed in this Court, tucked away in the 2-½ pages Plaintiffs elected not to translate is this passage explaining the type of relief Plaintiffs sought:

> [That Defendants be] prohibited as individuals and as a whole or partial group for a period of 5 years starting April 1, 2007 . . . to direct[ly] or indirectly provide, sell, rent, lease, or supply sound and video recording products as well as wireless sound and video surveillance products to police, military or governmental intelligence agencies in Denmark or abroad.

O'Connor Decl., Ex. A at 2.

Thus, Plaintiffs' attempt to change the subject notwithstanding, it is clear that Plaintiffs sought in Denmark a preliminary injunction that would have barred Defendants from doing business anywhere in the world, with "police, military or governmental intelligence agencies in Denmark or abroad." *Id.* Given that the United States is a subset of "in Denmark or abroad," what Plaintiffs did not tell the Court was that the relief they were seeking here had already been

3

sought in Denmark and, after a four-day contested hearing, Plaintiffs were found to have no entitlement to that relief.  Trading on the Court's presumed lack of fluency in Danish, Plaintiffs cast their motion in this Court as the logical follow-on to the relief they had obtained in Denmark.  This characterization concealed that the Danish court, by denying Plaintiffs' principal request for relief, had held that Defendants were fully entitled to compete against Plaintiffs anywhere in the world so long as they did not do business with those customers of Plaintiffs appearing in the Court's order.  Defendants can hardly think of a fact more material to Plaintiffs' preliminary injunction motion than the fact that Plaintiffs had already litigated and lost a request for the very relief they sought here.

      **B.**      **Plaintiffs Did Not Have a Good Faith Basis for Asserting Their Federal Claims or Invoking the Jurisdiction of this Court**

Plaintiffs do not even begin to defend their federal claims until page 24 of their opposition.  Plaintiffs' attempt to defend a Lanham Act claim is more or less confined to citing a few cases for the proposition that Section 43(a) of the Lanham Act applies to "false or misleading description[s] of fact or false and misleading representation[s] of fact."  Pl. Opp. at 26.  Defendants do not disagree with that sentiment, so far as it goes.  But Section 43(a) of the Lanham Act does not create a broad federal cause of action for lying.  Rather, Section 43(a) reaches only false or misleading statements "as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person."  15 U.S.C. § 1125(a).  Thus, Section 43(a) applies only to false statements as to what person or company is standing behind a product offered for sale, classic "passing off" claims.  While Plaintiffs claim that Section 43(a) is broad enough to create a federal cause of action for theft of trade secrets or intellectual property, the plain language of the statute refutes such a position, and eight Justices of the United States

4

Supreme Court[1] unanimously rejected Plaintiffs' argument in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003), a case not cited to the Court in Plaintiffs' motion papers.  Of course, Plaintiffs' preliminary injunction papers did not cite a single case in support of their Lanham Act claim, but merely quoted the language of the statute.

Most alarming is that Plaintiffs apparently view their Lanham Act claim – with the 8-0 Supreme Court rejection of Plaintiffs' position – as their "stronger" federal claim.  Plaintiffs' opposition swiftly backpeddles from Plaintiffs' claim under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, stating that "Plaintiffs' primary claim to subject matter jurisdiction arises from Section 43 of the Lanham Act."  Pl. Opp. at 30.  But Plaintiffs' CFAA claim was made in bad faith even as a "secondary" claim.

Even facing the specter of sanctions, Plaintiffs do not really defend the notion that a United States criminal statute would reach a dispute concerning alleged use of a Danish computer, in Denmark, by Danes working at a Danish company.  Plaintiffs' opposition does not cite a single case to support the notion that it acted in good faith in alleging that Defendants acted in violation of this United States criminal statute,[2] such as cases explaining how Plaintiffs claims (false as they are) would satisfy the elements of a CFAA a claim even if they were true.  Plaintiffs' opposition makes no attempt to defend a claim that Spectronic's computers in

---

[1] Justice Breyer recused himself from the case.

[2] Of course, Plaintiffs' willingness to accuse Defendants of violating a criminal statute demonstrates that it is easy to make an allegation of criminal misconduct against one's enemies when unrestrained by the truth.  That is all that really needs to be said about Plaintiffs' attempt to besmirch Defendants' character by asserting (in their opposition and in open court) that Defendants are the subject of a Danish police investigation based on a criminal complaint filed by Plaintiffs.  Regrettably, anyone can file a criminal complaint.

Denmark are "protected computers" under CFAA[3]; or that any access Defendants had to Spectronic's computers, while employed by Spectronic was either unauthorized or in excess of the authorized access; or that Plaintiffs actually suffered the requisite damages for a civil cause of action under CFAA. Because Plaintiffs now do not even attempt to show a good faith basis for asserting any of these required elements, Defendants simply note that the reasons why these elements cannot be satisfied are set forth at pages 13-14 of Defendants' memorandum in support of their motion for sanctions.

Absent a cognizable federal claim – and Plaintiffs' Lanham Act and CFAA claims fall far short of the mark – Plaintiffs' only remaining potential basis for invoking the jurisdiction of this Court is diversity jurisdiction, but Defendants' preliminary injunction opposition and sanctions motion identified the panoply of cases recognizing (contrary to the allegations in Plaintiffs' complaint) that there is no diversity jurisdiction here. Plaintiffs' opposition does not even attempt to defend Plaintiffs' invocation of diversity jurisdiction.

### C. Defendants Did Everything That Reasonably Could Be Expected Of Them In Raising the Sanctionable Nature of Plaintiffs' Conduct

With little to say about the merits of their claims, or their description of the Danish preliminary injunction proceedings, most of Plaintiffs' opposition consists of misguided efforts at character assassination. But Plaintiffs cannot stave off the sanctions they so richly deserve by impugning the motives and conduct of Defendants' counsel. Defendants and their counsel did *more* than could reasonably be expected of them in responding to Plaintiffs' preliminary injunction motion, educating the Court about the legal flaws and factual misrepresentations in

---

[3] Plaintiffs also do not defend their use of statutory language in he definition of a "protected computer" that was superseded by amendment in 2002.

Plaintiffs' complaint, and giving Plaintiffs an opportunity to drop this matter before it reached a hearing, in the time allowed.  Plaintiffs' diversionary tactics cannot change that.

      Plaintiffs' opposition asserts as follows:

> Defendants should not be rewarded with the rarely issued and inherently punitive sanction of attorney's fees where it appears that Defendants deliberately denied Plaintiffs an opportunity to avail themselves of any safe harbor from this Court's inherent authority to sanction.

Pl. Opp. at 3.  This argument refers to Defendants' offer, communicated by voicemail message at about 12:15 p.m. on April 21, 2008 (the day before the preliminary injunction hearing), to forgo seeking sanctions if Plaintiffs would agree to withdraw their motion for preliminary injunction and dismiss this action.  According to Plaintiffs, "[a]n analysis of the method by which Defendants 'notified' Plaintiffs of Defendants' intent to move for sanctions suggests strongly that Defendants intended to place Plaintiffs in an impossible position to avail themselves of *any* safe harbor contemplated under applicable sanctions jurisprudence."  Pl. Opp. 17.  Plaintiffs' claims of bad faith on the part of Defendants' counsel are untrue, and demonstrably so.

      Plaintiffs first complain that "[b]oth the individual Defendants and their Danish counsel, therefore, had notice of Plaintiffs' representations to this Court concerning the January 8, 2008 decision of bailiff's court of Randers 11 or 12 days prior to the April 22, 2008 argument date set by this Court."  Pl. Opp. at 18.  A clearer case of blaming the victim for not discovering the crime sooner is difficult to imagine.  Essentially, Plaintiffs' claim is that Defendants and their Danish counsel, all native Danish speakers and none of whom are American lawyers, should have perceived Plaintiffs' misleading characterization of the Danish injunction farther in advance of the hearing than they did, and perceived the significance in the American court proceedings of the Danish court's denial of the very relief sought here before Defendants had identified and

7

retained American counsel to advise them. Undersigned counsel was no retained until April 17, five (5) days before the hearing.

Plaintiffs' attempt to impugn Defendants' counsel's character fares no better. Plaintiffs complain that (1) Defendants' counsel waited to long to raise the sanctionable nature of Plaintiffs' conduct; (2) did not try hard enough to speak to a live voice on the issue; and (3) filed their preliminary injunction opposition (which included a request for sanctions) too soon after having left Plaintiffs' counsel a voicemail offering to forgo a sanctions request in return for withdrawal of the preliminary injunction motion and dismissal of the case. Each of these assertions of wrongdoing by counsel is baseless.

To briefly recap the chronology:

- <u>Thursday, April 17, 2008</u>. Defendants' counsel were retained by Defendants on Thursday, April 17, 2008. Upon their retention, Defendants' counsel contacted Plaintiffs' counsel and requested copies of the exhibits Plaintiffs had filed under seal and not sent to Defendants or their Danish counsel. Later that day, the Court issued an order setting a hearing on Plaintiffs' preliminary injunction motion for Tuesday April 22, 2008. O'Connor Decl. ¶¶ 2-3.

- <u>Sunday, April 20, 2008</u>. At about 9:21 p.m. on Sunday, April 20, 2008, Defendants' counsel received emailed translations of the three pages of the 45-page Danish preliminary injunction decision attached to Plaintiffs' motion papers. Plaintiffs had attached only three pages of the decision (which was in Danish) to their motion papers, and had provided an English translation of only one-half page of those three pages. The one-half page translated by Plaintiffs demonstrated that the Danish court had preliminarily enjoined Defendants from doing business with a finite list of Spectronic suppliers and distributors. The translation of the other 2-½ pages filed by Plaintiffs but not translated showed that Plaintiffs, in a fact not disclosed to the Court, had actually asked the Danish court to issue an injunction that would have prohibited Defendants from competing against Spectronic on a worldwide basis, and that the Danish court had refused to enjoin Defendants from competing against Spectronic. Instead, the Danish court denied that requested relief and permitted Defendants to compete on a worldwide basis with the only restriction being a prohibition on doing business with a stated list of suppliers and distributors. O'Connor Decl. ¶ 4.

- <u>Monday, April 21, 2008</u>. After meeting with the individual Defendants (for the first time) on the morning of April 1, 2008, reviewing Defendants' draft

8

    opposition, and explaining the nature of the proceedings that would take place the next day in court, Defendants' counsel obtained authority from Defendants to transmit an offer to forgo a request for sanctions if Plaintiffs withdrew their injunction request and dismissed the case. Defendants' counsel promptly conveyed that offer through a voicemail left at Plaintiffs' lead counsel's office. At about 2:45 p.m., Defendants filed their opposition to Plaintiffs' preliminary injunction motion. O'Connor Decl. ¶¶ 4-5. Plaintiffs' lead counsel acknowledges that he received the voicemail from Defendants' counsel in the early evening hours of the same day. Pl. Opp. at 20. Plaintiffs' counsel never responded to Defendants' counsel voicemail. O'Connor Decl. ¶ 5.

- <u>Tuesday, April 22, 2008</u>. The hearing on Plaintiffs' preliminary injunction hearing began at 10:00 a.m. on April 22, 2008. By then it was 4:00 p.m. in Denmark, meaning that Plaintiffs' counsel, who admittedly know of Defendants' offer, to confer with his clients in Denmark prior to the hearing. Moreover, Plaintiffs' also had a Spectronic officer present in court, and Plaintiffs' opposition confirms that Plaintiffs had the opportunity to confer with that Spectronic officer concerning Defendants' offer to withdraw their sanctions request in advance of the hearing. Pl. Opp. at 20-21. Plaintiffs' counsel never said anything to Defendants' counsel prior to the hearing about needing more time to confer with his clients on the offer to withdraw the sanctions request. At the hearing, Defendants' counsel readily agreed to put off consideration of Defendants' request for sanctions so that Plaintiffs would have a full opportunity to brief the issue. To this day, Plaintiffs have never approached Defendants to express a desire to resolve Defendants' sanctions motion by any means other than judicial ruling.

Given that chronology, Plaintiffs' complaints cannot be credited. Defendants had to pay a considerable "rush" premium to get an English translation by Sunday night of the three pages of the Danish preliminary injunction decision that Plaintiffs filed in this Court. Defendants had to incur this expense because Plaintiffs translated only one-half page of a 45-page decision – only those portions which were potentially helpful to Plaintiffs. Once Defendants' counsel – who were in the midst of drafting a 40-page opposition to Plaintiffs' preliminary injunction motion – obtained an English translation of those three pages late on Sunday night, what were they supposed to do in terms of contacting opposing counsel that evening? Were they supposed to make an offer to compromise Defendants' sanctions claim when Defendants' counsel had absolutely no authority from their clients to make that offer? Having received the translation on

9

Sunday night, Defendants' counsel met with their clients (for the first time) on Monday morning and, upon receiving authority to propose a resolution of the sanctions issue, promptly left a message for Plaintiffs' counsel to that effect.

Plaintiffs next submit that Defendants' counsel was deliberately trying to conceal Defendants' offer to forgo a request for sanctions by making that offer in a voicemail left at lead Plaintiffs' counsel's direct dial line at his office. Pl. Opp. at 22. Again, how much should Defendants' counsel be expected to do under the circumstances? Defendants' counsel had by then been on the case for four days. Defendants' counsel were in the midst of finalizing their opposition to a motion that sought to put Defendants out of business in this country, and had to prepare for a hearing set for the next day. In any event, Plaintiffs admit that their counsel received the voicemail by early that evening, which meant that he had time to confer with the Spectronic officer who had traveled to the United States for the hearing and the six-hour time difference between Washington, D.C. and Denmark worked in Plaintiffs' favor because counsel had an ample opportunity to confer with any clients in Denmark prior to the hearing on April 22.[4] Moreover, Plaintiffs' claim of insufficient time to consider Defendants' offer – as if Plaintiffs might have accepted it if they had been given more time that simply did not exist – is

---

[4] Plaintiffs' undignified attempt to impugn Defendants' counsel regarding Defendants' attempt, as directed by the Court, to propose a briefing schedule on this motion is misguided. Three days after the hearing, Plaintiffs' counsel, who assuredly had conferred with his clients ion the results of the hearing, stated he had no ability to state how long Plaintiffs would need to respond to Defendants' sanctions motion. Defendants' counsel simply stated that Defendants would submit a proposal stating that Plaintiffs had provided no input on a proposed schedule if Plaintiffs did not respond within the next *five days*. Defendants' counsel did note that the time difference would assist Plaintiffs' counsel in conferring with his clients on this issue because it would allow for a telephone conversation taking place prior to the work day in the United States. Of course, the time difference also *helped* Plaintiffs here in counsel's ability to communicate Defendants' offer to his clients because the early morning hours on the day of the hearing were the middle of the day in Denmark, to say nothing of the Spectronic officer who accompanied Plaintiffs' counsel to court.

belied by the fact that Plaintiffs still have not dismissed their claims now, more than a month after Defendants offered to forgo sanctions if Plaintiffs were willing to withdraw their preliminary injunction motion and dismiss the case.

Plaintiffs' third complaint is that Defendants filed their preliminary injunction opposition just 2-½ hours after leaving a voicemail offering to forgo or withdraw their sanctions request if Plaintiffs withdrew their preliminary injunction motion and dismissed the case.  Pl. Opp. at 21.  This supposed grievance is misguided on its face.  Defendants' offer was to forgo or ***withdraw*** a request for sanctions, and Defendants stood ready to follow through on that offer until the preliminary injunction hearing began.  O'Connor Decl. ¶¶ 4-5.  Again, Plaintiffs' counsel, who admits receiving the voicemail from Defendants' counsel the night before the hearing, never stated a need for additional time to confer with his clients or consider Defendants' proposal.

But more fundamentally, what were Defendants supposed to do?  Were they supposed to hold off on filing their preliminary injunction opposition in order to wait for a response from Plaintiffs' counsel?  That would have been grievously unfair to the Court.  Defendants' opposition was forty pages in length, and it had to be that long because Plaintiffs' papers had done nothing to educate the Court on the legal issues relating to Plaintiffs' causes of action.  Plaintiffs cited no case law concerning heir Lanham Act claim, and either missed or otherwise failed to disclose the contrary Supreme Court decision in *Dastar* that is directly on point.  Plaintiffs cited language from the CFAA that had long been superseded by amendment, incorrectly identified the elements of a CFAA claim, and failed to explain how the correct elements had been construed by the courts.  Plaintiffs had incorrectly informed the Court that diversity jurisdiction existed here, when it plainly does not.  Moreover, Plaintiffs had fundamentally misled the Court concerning the nature of the parallel proceedings in Denmark, a

11

misleading characterization that needed to be brought to the Court's attention sufficiently early so that the Court could review the relevant Danish pleadings.

In Defendants' view, the Court was entitled to a roadmap concerning Plaintiffs' claims, one that made a credible attempt to identify the elements of Plaintiffs' claims and the case law that had a bearing on those claims. Since the movant had not bothered to do that, Defendants thought it best to get their opposition in as early as possible. Even then, in light of the circumstances, Defendants' opposition could not be filed prior to the afternoon of the day before the preliminary injunction hearing. In these circumstances, Defendants' course of conduct was perfectly appropriate, to get its opposition on file as soon as possible and maintain their offer to withdraw their request for sanctions prior to the preliminary injunction hearing.

Putting aside the lack of merit in Plaintiffs' various complaints about Defendants' counsel's conduct, it bears mention that Plaintiffs never (until now) complained that they did not have sufficient time to consider Defendants' proposal to withdraw its sanctions request. At the preliminary injunction hearing, Defendants readily agreed to leave consideration of their sanctions request for another day so that Plaintiffs could brief the issue, and now, more than a month after Defendants first requested sanctions, and some 24 days after Defendants filed their motion for sanctions, Plaintiffs *still* have not dismissed this action. That fact undermines Plaintiffs' claim that they might have done so if they had more time to consider Defendants' offer. This is all just posturing by Plaintiffs that, in bad faith, imposed financial injury on its competitor through a frivolous and highly disingenuous lawsuit filed in this Court.

### III.   CONCLUSION

Plaintiffs' opposition talks in terms of Defendants' being rewarded if the Court imposes sanctions on Plaintiffs. Defendants seek no reward. Defendants simply want to be where they

would have been had Plaintiffs not filed this action in bad faith, seeking relief they had been denied in Denmark through assertion of a frivolous set of federal claims.  Defendants seek no profit from this case, but simply seek an order that will make them whole and ensure that Plaintiffs' conduct in bringing and litigating this action does not allow them to succeed in imposing a substantial penalty on its fledgling competitor (in terms of legal fees) when Defendants have done nothing but what they were already cleared to do in the Danish case.

                                      Respectfully submitted,

                                      */s/  John F. O'Connor*

                                      Steven K. Davidson (D.D.C. Bar No. 407137)
                                      John F. O'Connor (D.D.C. Bar No. 460688)
                                      STEPTOE & JOHNSON LLP
                                      1330 Connecticut Avenue, N.W.
                                      Washington, D.C. 20036
                                      (202) 429-3000 – telephone
                                      (202) 429-3902 – facsimile
                                      sdavidson@steptoe.com
                                      joconnor@steptoe.com

                                      *Attorneys for Defendants*